HARDY, Judge.
This is a compensation suit in which plaintiff claims permanent and total disability as the result of an accident suffered in the course of his employment. After trial there was judgment in favor of defendant, rejecting plaintiff's demands, from which plaintiff brings this appeal.
The only question presented on this appeal deals with the extent and nature of the injury suffered by plaintiff and is purely factual in nature. All other facts material to a consideration of the issue stated were established without dispute. On November 3, 19S0, plaintiff, who was employed as a laborer in the operation of defendant employer’s sawmill operations, sustained an injury to his right leg, which was caused by catching his leg between two rolling logs. The point of injury was about six inches above the knee. Plaintiff complains that as a direct result of the accident and the injuries to the hip, leg and knee he is unable to work and is totally and permanently disabled. On the day of the accident plaintiff was taken for examination and treatment to the Murrell Clinic and subsequently he was examined by other physicians whose testimony will be noted hereinafter.
Plaintiff testified on trial that he was disabled by reason of stiffness of the right knee and the consequent pain engendered by any attempt to perform manual labor. However, it was established, and plaintiff admitted, that he had worked subsequent to the accident for a period of some two weeks. During this time he was employed by his former employer, the defendant herein, in the performance of the same nature and character of work that he had done before the accident. Plaintiff testified that he was forced to quit work at the end of this time because he could not continue the performance of his duties by reason of pain which he suffered and his inability to use his right leg. On one other occasion he worked for another party in the sawmill business for a *397 few hours, but with this exception, he appears to have performed no labor and to have been engaged in no regular employment since the two weeks which he worked during the month of December, 1950.
The medical testimony is less conflicting and is more definite in the. conclusions expressed by the medical experts than is usually the case. We summarize briefly the opinions of the doctors who examined plaintiff. Plaintiff was first examined by Dr. John T. Mosley on -March 23, 1951, at the request of his counsel. Although Dr. Mosley did not testify on trial of the case his written report, directed to plaintiff’s counsel at the time, was made a part of the record, and we quote the body of the report in full, as follows:
“I examined Mr. M. T. Waxley of Montgomery today, March 23, 1951, and find the following: — tenderness of lateral aspect of right thigh, extending on down into- right leg.
“X-rays of pelvis and right hip femur and right knee were all negative for bone or joint pathology.
“From the history of a log rolling over right leg in November, 1950, I am of the opinion that he is suffering from traumatic neuritis. In all probability, it will take from three to four months yet for a complete recovery.”
Plaintiff was next examined, also at the request of his counsel, by Dr. T. A. Dekle on June 9, 1951 and again on September 10, 1951. The following testimony given by Dr. Dekle summarizes his conclusions upon examinations made on the dates set forth :
■ “The condition at the time in June when I examined him was that the knee was stiff, the muscles of the thigh above the knee were shrunk and tender on pressure, and he complained of considerable pain in the whole leg even up to his hip.
“I examined him again on September 10 and at the time I find that many of the muscles have recovered and functioning, and stiffness of the knee was still present to the same extent it was in June.”
The testimony of Dr. Dekle and the letter from Dr. Mosley made up plaintiff’s presentation of expert testimony with respect to the nature and extent of his injury. It should be noted that Dr. Dekle did not have the benefit of any X-ray examinations or photographs at the time of either physical examination made of plaintiff.
The conclusion of Dr. Murrell who first examined and treated plaintiff on the very day of the accident is expressed in a communication to defendant’s counsel, dated Feb. 15, 1951, which read as follows:
“This is to advise that we examined the above mentioned party this date, as well as on November 3, 1950, and November 21, 1950.
“It was our opinion then and is still our opinion that he was at that time physically able to resume his usual activities. There was no X-ray evidence of injury to the right knee.”
Dr. Murrell’s testimony by deposition is completely in accord with his conclusion above expressed in writing. The doctor testified that he found no- evidence whatsoever of any bone o-r nerve injury, and further, that plaintiff showed no indication of any stiffness in the leg on the occasion of his examination.
A thorough examination of plaintiff was made by Dr. Daniel M. Kingsley, an orthopedic specialist, on January 15, 1951 at the request of plaintiff’s counsel. The record contains Dr. Kingsley’s detailed report of his examination made in writing and directed to- plaintiff’s counsel. The report notes that plaintiff’s gait was normal with no limp; that there was no localization of pain in either knee; that there was no* objective residual result from the injury, which was diagnosed by the doctor as a sprain of the right knee. The doctor did find some malalignment of the right lower extremity which he attributed to a secondary result from an old fracture of the leg which had been sustained by plaintiff in 1939. The doctor also commented on the fact that the patient did have some strain on his right knee at all times due to this malalignment. The deposition o-f Dr. King-sley introduced on behalf of defendant on *398 trial of the case ¡bears out the findings evidenced in his written report.
In order to' clarify the situation which existed at time of trial we think it proper to note that the counsel originally retained by plaintiff was not the counsel who represented plaintiff on trial of the case. The medical reports, above noted as being made at the request of plaintiff’s counsel, were directed to the attorney first engaged who subsequently withdrew his representation of plaintiff and was su'cceeded by plaintiff’s present counsel.
The medical testimony overwhelmingly preponderates against plaintiff’s contention of permanent and total disability. In fact, we are SO' convinced as to the conclusiveness of the medical testimony that we think it unnecessary to discuss the lay testimony presented by the parties litigant in any detail. In support of his claim and in substantiation of his own testimony, plaintiff tendered six lay witnesses, which number included his father, his brother, his 'brother-in-law and three fellow employees. Through this testimony plaintiff attempted to establish his physical condition as being inconsistent with the ability to' continue manual labor. Particularly the emphasis was placed upon the evidence of injury indicated by plaintiff’s limp and the inability to walk normally. We note, as did the District Judge, that the witnesses for plaintiff, aside from the members of his family, were vague and uncertain in their testimony on this point and at least two' of them could riot be positive that plaintiff had limped or that they had observed him to be limping since the accident. ' Countering the testimony offered by plaintiff the defendant presented the testimony of five witnesses in addition to his own. None of these witnesses had observed any limp; a number of them testified that they had been closely associated with plaintiff during the two-week period of his employment at the mill after the accident and that they observed no' handicap of any nature, and, on the contrary, they testified that plaintiff had done his work as well as had been his custom before the accident and that he made no complaint of pain at any time. Additionally, one of the witnesses testified that he had observed plaintiff at unsuspicious times and that plaintiff gave no evidence of any affection in his normal walk — in fact that he (had on one occasion observed plaintiff chasing a wounded rabbit.
We are convinced, as was the Judge of the District Court, that plaintiff has failed to sustain the burden of proof. The only justifiable conclusion is that plaintiff received what was only a minor injury which had no disabling effect whatsoever.
For the reasons assigned the judgment appealed from is affirmed at appellant’s, cost.
KENNON, J., not participating.